IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PENNINGTON V. SPARTANNASH CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ROBERT PENNINGTON, APPELLANT,

V.

SPARTANNASH COMPANY, APPELLEE.

Filed October 29, 2019.    No. A-19-190.

Appeal from the Workers' Compensation Court: JOHN R. HOFFERT, Judge. Affirmed.

Terry M. Anderson and Michael W. Khalili, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellant.

Jenny L. Panko and Jenna M. Christensen, of Baylor Evnen, L.L.P., for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Robert Pennington appeals from the Order of Dismissal entered by the Nebraska Workers' Compensation Court, denying benefits from his employer, SpartanNash Company (SpartanNash). Pennington challenges the compensation court's finding that his medical experts failed to establish workplace causation of his injuries. For the reasons set forth below, we affirm the compensation court's order.

## BACKGROUND

Pennington was a store manager for SpartanNash. Pennington worked for SpartanNash from September 2012 until May 28, 2016. Pennington filed a petition in the compensation court, alleging he was injured by a fire at his workplace on March 25, 2016. Pennington claimed he

developed nonspecific interstitial pneumonia (NSIP) as a result of exposure to smoke and chemicals from a fire extinguisher used on the date of the fire.

A trial was held in the compensation court on November 6, 2018. The dispute at trial was the causation of Pennington's NSIP. Pennington testified at trial, and the court received various medical records into evidence. The evidence is summarized below.

Pennington testified that on March 25, 2016, he noticed a small fire in an unused walk-in freezer at the back of the store. Using a fire extinguisher, Pennington put out the flames after about twenty to thirty seconds.

The Council Bluffs Fire Department subsequently arrived to respond to the fire. Pennington testified that he was treated with oxygen by the fire department but this was not documented in the report of the incident prepared by the fire department. Pennington chose not to go to the hospital and seek further medical treatment. After the fire department left, Pennington opened the store back up to the public and continued to work his normal shift.

Several days later, on April 5, 2016, Pennington fainted while stocking shelves at work. Pennington went to the emergency room. While receiving treatment in the emergency room, Pennington listed a number of preexisting conditions and symptoms but did not mention the workplace fire. He did complain of chest pains, shortness of breath, and a headache.

Pennington saw his primary physician, Dr. Paul Vana, on April 14, 2016. During this visit, Pennington complained about shortness of breath. Vana noted that Pennington's shortness of breath on exertion "may or may not be new." Pennington had reported "increasing fatigue and shortness of breath over [the] past several months" according to Dr. Farid Kahn at Midwest Cardiology on June 18, 2015, which was 9 months prior to the fire.

Pennington did not report the fire to Vana during his first visit. Pennington's first mention of the fire incident to Vana was on April 25 during a subsequent visit. Pennington told Vana that he had inhaled a lot of smoke and extinguisher chemical after using a fire extinguisher at work a month earlier. Vana then referred Pennington to a pulmonologist.

On May 3, 2016, Pennington saw Dr. Patrick Meyers, a pulmonologist who had treated Pennington for prior issues, including sleep apnea and a followup from a stress test with abnormalities. During the stress test followup on November 12, 2015, Meyers noted that "[f]rom a pulmonary standpoint, [Pennington] is doing well." During the May 2016 visit, Meyers noted that there was no identifiable causes of Pennington's shortness of breath, but that the smoke and extinguisher chemical was "now certainly out of his system."

Later that year, on September 27, 2016, Pennington sought medical treatment for chest pain and a chest x-ray showed "diffuse interstitial changes, findings consistent with component of diffuse interstitial fibrosis which has progressed from prior exam in 2016 and likely progressed from prior examination in 2012." A CT scan on September 29 showed interstitial fibrosis, a lung disease. Meyers later reviewed the CT scans on December 12 and confirmed that the scan showed interstitial fibrosis. Meyers stated that the interstitial pulmonary fibrosis is idiopathic, meaning the condition does not have a clear cause.

Pennington underwent a lung biopsy on March 2, 2017. On March 10, Dr. Daniel Hershberger reviewed the lung biopsy, which he found to be consistent with the prior CT scan.

Hershberger diagnosed Pennington with NSIP and ordered him to use oxygen to support his breathing, not to work anymore, and to avoid stress.

On October 24, 2018, Vana wrote a letter "To Whom it May Concern" stating that "it is more likely than not that the inhalation injury suffered on March 25, 2016, is the cause of pneumonitis and [Pennington's] symptoms." On October 30, Hershberger wrote a letter, similarly addressed, stating Pennington's NSIP began after exposure to smoke and fumes at work. Hershberger also stated that, in his opinion, "it is more likely than not that this exposure resulted in his lung disease."

SpartanNash presented an expert opinion from Dr. Patrick Hartley, who reviewed Pennington's records. Hartley stated that while inhaling extinguisher chemical may cause airway and lung injuries, he was unable to identify cases where such inhalation caused chronic interstitial lung disease. Hartley concludes that he "cannot state to reasonable medical certainty that the subsequent identification of a chronic interstitial lung disease (NSIP on biopsy) is related to the chemicals or dust [Pennington] inhaled." Finally, Hartley stated that Pennington's lung disease is likely attributed to etiologies other than the fire, or that his NSIP is idiopathic.

On January 28, 2019, the compensation court entered its order of dismissal, finding that Pennington "failed to persuade the fact finder on the issue of causation." The court noted that the nature of the lung injury allegedly sustained by Pennington was a subjective condition, which in turn required a medical expert's opinion to establish the nature of the injury and its causal nexus to the accident. The court then reviewed the causation opinions of Vana and Hershberger, along with its "thorough review and exhaustive analysis of the medical evidence submitted." The court noted its duty to assess the probative value and persuasiveness of the various opinions submitted. The court went on to state:

> The opinions of [Pennington's] experts were each one paragraph in length without much, if any, discussion regarding specifically how such a disease physically manifests itself; how it progresses over time; what symptoms are classic as one attempts to pinpoint the date of onset of the disease; how an environmental insult (irritant/contaminate/particulate) might impact one's lungs; and of course, what other possible causes must be considered and the process to be employed in choosing between them. Again, the opinions offered by [Pennington's] experts contain no detail of any kind setting forth any persuasive basis, support or foundation for the causation opinions they have offered.

The court reflected that Pennington's expert's opinions appeared to be primarily grounded upon the temporal relationship between the fire incident and the appearance of Pennington's symptoms. However, the court noted that the persuasive value of these experts' opinions was eroded by virtue of the numerous unanswered questions outlined by the court, as well as the previous diagnostic testing and medical records noting pre-accident complaints of shortness of breath, and the prior opinions of one of Pennington's own treating physicians along with SpartanNash's consulting expert who each opined that the cause of Pennington's disease is likely idiopathic.

The court concluded that the medical evidence "simply does not allow this fact finder to adopt plaintiff's theory of the case." Thus, the court dismissed Pennington's petition for "failure to persuade the fact finder on the issue of causation."

Pennington appeals the compensation court's order of dismissal.

## ASSIGNMENTS OF ERROR

Pennington assigns that the Worker's Compensation Court erred in (1) inaccurately applying Nebraska law on the sufficiency of medical expert opinion on workplace causation of a claimant's injury or illness and (2) finding that Pennington's medical experts' opinions were insufficient to show workplace causation of Pennington's injuries.

## STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

An appellate court independently reviews questions of law decided by a lower court in a workers' compensation case. *Id.* The court's factual findings have the effect of a jury verdict, and we will not disturb them unless they are clearly wrong. *Id.* In testing the sufficiency of the evidence to support the Workers' Compensation Court's findings, an appellate court considers the evidence in the light most favorable to the successful party. *Id*. The appellate court resolves every controverted fact in the successful party's favor and gives that party the benefit of every inference that is reasonably deducible from the evidence. *Id.*

## ANALYSIS

*Sufficiency of Expert Medical Opinions.*

Pennington argues that the compensation court inaccurately applied Nebraska law on the sufficiency of medical expert opinions on workplace causation of a claimant's injury or illness. Pennington acknowledges that he had the burden of proving that a workplace accident occurred, that he was injured, and that the accident or incident was the cause of his injury. See *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016). He also agrees that it was necessary for him to adduce medical evidence to establish causation. See *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017) (if nature and effect of workers' compensation claimant's injury not plainly apparent, then claimant must provide expert medical testimony showing causal connection between injury and claimed disability).

Pennington then proceeds to cite caselaw discussing whether expert medical evidence was sufficient as a matter of law. See, *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014) ("magic words" not required in medical expert evidence so long as evidence establishes required nexus between work-related event and claimant's injury); *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996) (medical expert's opinion that injury "more likely than not"

caused by work incident not insufficient as matter of law); *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991) (medical expert report did not state his opinion within "reasonable medical certainty"; however, other notes in doctor's record indicate a conclusion to reasonable degree of medical certainty that work incident caused worker's injuries). Pennington contends that the compensation court failed to apply this case law in reviewing his expert witness opinions and that it thus erred as a matter of law. We disagree and conclude that the trial court's determination was based on factual findings and thus will not be disturbed absent a clear error. Here, the compensation court did not find Pennington's experts' opinions were insufficient to establish causation as a matter of law. These experts both stated their opinions that Pennington's injuries were "more likely than not" caused by the March 25, 2016, event. This language has been recognized as legally sufficient to establish causation. See *Berggren v. Grand Island Accessories, supra*. Rather, after thoroughly reviewing all of the medical records and evidence, the compensation court simply found Pennington's experts' opinions to be unpersuasive, noting the many ways in which the opinions were without support and deficient. The court found that "[t]he state of the medical evidence simply does not allow this fact finder to adopt plaintiff's theory or the case . . . given the failure to persuade the fact finder on the issue of causation . . . ." Thus, contrary to Pennington's argument, the trial court did not find the opinions of Pennington's experts were legally insufficient. It is clear that the court's decision was based upon factual findings and this matter should be reviewed under the clear error standard, which we do below.

*Sufficiency of Evidence.*

Alternatively, Pennington argues the compensation court was clearly wrong in its failure to properly analyze and apply Pennington's expert medical evidence. Pennington asserts that the court made incorrect conclusions regarding Pennington's medical history and failed to consider the medical evidence as a whole. We disagree, and we find no clear error in the court's conclusion that Pennington's expert medical evidence was unpersuasive.

The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical evidence, even when the health care professionals do not give live testimony. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). It is the role of the Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

We agree with Pennington that there was a significant amount of medical records received in evidence and that a review of his expert's opinions should take these records into consideration. However, we disagree with his argument that the compensation court failed to consider the medical evidence as a whole in weighing the opinions. The court noted in its order that it "engaged in a thorough review and exhaustive analysis of the medical evidence submitted." The court cited to several exhibits in its discussion of Pennington's medical records. The court concluded that after its in depth analysis of all of the medical evidence submitted, the persuasive value of Pennington's causation opinions was "eroded or otherwise weakened." The compensation court, as the sole judge of the credibility of the witnesses, determines the weight to be given to medical evidence. The court was free to accept or reject the opinions from Pennington's expert witnesses.

Pennington also takes issue with the compensation court's recitation of his medical background; namely, the references to mild interstitial changes in 2012, his prior shortness of breath complaints, and the reports that suggest his condition was idiopathic. However, each of these references to the medical evidence are supported by the record. Although the compensation court did not make a determination that Pennington's injuries were preexisting the workplace incident, it pointed these matters out in reaching its conclusion that Pennington's expert witness opinions were unpersuasive. We find no error in the court's recitation of Pennington's medical evidence.

The compensation court's conclusion that Pennington's experts were not persuasive was not clear error. Because we find the compensation court did not clearly err, we affirm the order of dismissal.

## CONCLUSION

We conclude that because the compensation court issued its order based on factual findings, the proper standard of review is for clear error. We find no clear error in the compensation court's conclusion that Pennington's medical experts' opinions were insufficient to persuade the trial court that Pennington's injury was caused by a workplace accident. We affirm the judgment of the compensation court.

AFFIRMED.