STATE OF NEBRASKA, APPELLEE, V.
ROBERT R. EMRICH, APPELLANT.
557 N.W.2d 674

Filed January 17, 1997.   No. S-96-024.

P. Stephen Potter for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Robert R. Emrich appeals his conviction for operating or being in the actual physical control of a motor vehicle upon the public streets and highways within Red Willow County while he had a concentration of .10 of 1 gram or more by weight of alcohol per 100 milliliters of his blood.

Following a bench trial conviction in the Red Willow County Court, Emrich was placed on probation for 18 months. Among the provisions of his probation, Emrich was ordered to pay a $200 fine and ordered not to drive a motor vehicle for any purpose for 60 days.

Emrich appealed his conviction and sentence to the district court for Red Willow County, but failed to comply with Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 1996), which reads as follows:

> Within 10 days of the filing of the bill of exceptions in the district court, the appellant shall file with the district court a statement of errors, which shall consist of a separate, concise statement of each error a party contends was made by the trial court. . . . Consideration of the case will be limited to errors assigned and discussed.

The rule further provides that the district court may, at its option, notice a plain error not assigned.

The district court reviewed Emrich's case for plain error and upheld the county court's conviction and sentence of Emrich. Thereafter, Emrich filed an appeal in the Nebraska Court of Appeals. This court authorized that this appeal be transferred to its docket.

We reverse the decision of the district court for Red Willow County and remand the cause to the district court with direction to remand the matter to the county court for a new trial.

## ASSIGNMENT OF ERROR

In this court, Emrich submits only one assignment of error: The district court erred in affirming the county court's decision finding that the administrative license revocation postarrest advisement (advisory form) read to Emrich was adequate.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *State v. Christner, post* p. 549, 557 N.W.2d 707 (1997); *State v. Johnson*, 250 Neb. 933, 554 N.W.2d 126 (1996); *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995).

In a bench trial of a law action, including a criminal case tried without a jury, erroneous admission of evidence is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's factual findings necessary for the judgment or decision reviewed; therefore, an appellant must show that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through use of erroneously admitted evidence in a case tried without a jury. *State v. Christner, supra*; *State v. Lujano, ante* p. 256, 557 N.W.2d 217 (1996); *State v. Lomack*, 239 Neb. 368, 476 N.W.2d 237 (1991). See, also, *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992).

In determining whether evidence is sufficient to sustain a conviction in a bench trial, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. The trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *State v. Christner, supra*; *State v. Johnson, supra*; *State v. Hand*, 244 Neb. 437, 507 N.W.2d 285 (1993).

On appeal, if it appears the evidence is sufficient to support a conviction, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient, the cause

must be dismissed. *State v. Christner, supra; State v. Lee,* 227 Neb. 277, 417 N.W.2d 26 (1987). See *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986).

## FACTS

At approximately 1:30 a.m. on April 8, 1995, McCook police officer Larry Kinne stopped a pickup truck containing three people for investigation of "suspicious behavior." The truck was being driven by Emrich, and it contained two female passengers. The vehicle had been parked close to the front door of a closed, local law office when Kinne passed by it. At that time, Kinne observed a male in the driver's seat of the truck and another person kneeling or squatting down by the front door of the law office. A female who was standing by a door of the truck was behaving nervously, according to Kinne.

Kinne circled the block in his police cruiser and had radio contact with his superior. Kinne testified that as he approached the site of the law office, the people he had previously observed near the law office got into the truck. The truck backed out from where it had been parked and then proceeded down the street. At that time, Kinne turned around in the law office parking lot, activated his cruiser's emergency lights, and stopped the truck, which Emrich was driving.

When Kinne made personal contact with the occupants of the truck, he detected a fairly strong odor of alcohol coming from inside the truck. When he talked to the driver, who he later determined was Emrich, Kinne noticed that Emrich's eyes were bloodshot and that his speech was slurred and "thick-tongued."

While Kinne questioned the truck's occupants about what they were doing at the law office site, Emrich admitted he had been drinking. In response to Kinne's request, Emrich exited the truck he had been driving. Kinne noted that when Emrich got out of his truck he hung onto its door to support himself, he swayed from side to side in a somewhat circular motion, and he wavered to the side as he was walking. Kinne then asked Emrich to perform some field sobriety tests.

In all, Kinne had Emrich perform six sobriety tests. For the first test, Emrich was to recite the alphabet, which he did correctly, but his speech was slurred. On the second test, a finger

dexterity test, Emrich did not touch the tip of his finger to the tip of his thumb as directed. The thumb touched more to the top of the knuckle as opposed to the tip of the finger. During the third test, a one-leg stand, Emrich swayed from side to side and bounced on one foot, contrary to the instructions given him. He also failed to follow other instructions on how to perform the test. While the fourth test was being explained to him, Emrich was "kind of swaying." The test was to walk a straight line with heel to toe for nine steps, turn around, and return in the same manner. The record reflects he performed that test fairly well. The fifth test was a finger-to-nose test. In this test, the performer is instructed to stand with his heels together and his toes pointing out at a 45-degree angle. The performer's head is tilted back slightly, his eyes are closed, and his arms are raised out to the side. He is then told to touch the tip of his nose with his finger. The evidence reflects that Emrich failed this test. The sixth test was a Romberg balance test, wherein the performer puts his heels together, points his toes out at a 45-degree angle, keeps his arms to his sides, tilts his head back, and closes his eyes. In such position, the performer, upon command, is to count 30 seconds and say stop. Emrich's stopping time was 34 seconds. While performing the test, Emrich swayed "quite a bit from front to back and side to side."

Kinne testified that during the tests he detected the odor of alcoholic beverage on Emrich's breath. Based upon his observations and the results of the sobriety tests, Kinne testified that he was of the opinion that Emrich was intoxicated. The officer then administered a preliminary breath test to Emrich, arrested him, and transported him to the police station.

At the police station, Kinne read to Emrich an "Administrative License Revocation Advisement/Post Arrest" form. Subsequently, with Emrich's consent, a sample of his blood was taken by a nurse. The McCook Community Hospital clinical laboratory tested Emrich's blood.

Thereafter, Emrich was charged with operating or being in the actual physical control of a motor vehicle upon the public streets and highways within Red Willow County while he (1) was under the influence of alcoholic liquor *or* (2) had a concentration of .10 of 1 gram or more by weight of alcohol per

100 milliliters of his blood, to wit: .20 of 1 gram by weight of alcohol per 100 milliliters of his blood.

At trial, over the objection of Emrich, the trial court accepted into evidence exhibit 1, a report from the laboratory stating that Emrich had a concentration of .10 of 1 gram or more by weight of alcohol per 100 milliliters of his blood, to wit: .205.

The trial court made no finding in regard to whether Emrich was under the influence of alcohol while he was driving his truck prior to his arrest. Instead, the trial court specifically found Emrich guilty of operating or being in the actual physical control of a motor vehicle upon the public streets or highways within Red Willow County while he had a concentration of .10 of 1 gram or more by weight of alcohol per 100 milliliters of his blood.

## ANALYSIS

The determinative issue in this appeal is whether, over the objection of Emrich, the trial court erred in admitting into evidence the result of his blood alcohol test. We find that the trial court erred in admitting the test into evidence because Emrich was not adequately advised of the consequences of submitting to a blood test as required by Neb. Rev. Stat. § 60-6,197 (Reissue 1993) and this court's decisions in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), a civil case of administrative driver's license revocation, and *State v. Christner, post* p. 549, 557 N.W.2d 707 (1997), a criminal case similar to the case at bar.

In *Christner* and in *Smith*, we addressed the issue of whether an arresting officer, by reading an advisory form identical to the one in this case, gave a driver-arrestee adequate notice, as required by § 60-6,197(10), of the consequences of failing a chemical test to detect alcohol concentration in the driver-arrestee's body. We held in both *Christner* and *Smith* that the advisory form used in those cases prior to the administration of a chemical test to detect alcohol concentration in a driver-arrestee's body failed to fully inform the driver-arrestee of the consequences of submitting to, or submitting to and failing, a chemical test as mandated by § 60-6,197(10). That statute, in relevant part, provides:

> Any person who is required to submit . . . to a chemical blood, breath, or urine test or tests . . . *shall be advised* of (a) the consequences of refusing to submit to such test or tests and (b) the consequences if he or she submits to such test and the test discloses the presence of a concentration of alcohol in violation of subsection (1) of section 60-6,196.

(Emphasis supplied.)

(As an aside, we again note that the Nebraska Legislature amended the foregoing provision, with an operative date of February 27, 1996, to read: "Any person who is required to submit to a chemical blood, breath, or urine test or tests pursuant to this section shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(10) (Cum. Supp. 1996).)

We have held that the sensible reading of § 60-6,197(10) indicates that the Legislature intended drivers to be advised of the natural and direct legal consequences flowing from submitting to a chemical test and failing it. See, *Christner, supra*; *Smith, supra.* We have previously found that the advisory form used in this case fails to inform a driver-arrestee that the results of a valid chemical test could be competent evidence in any prosecution involving a driving under the influence offense. See, *Christner, supra*; *Smith, supra.* Citing our decision in *State v. Deets*, 234 Neb. 307, 450 N.W.2d 696 (1990), we concluded in *Christner* and in *Smith* that the purpose of requiring an officer to advise a driver-arrestee of the consequences of refusing to take a breath test was to ensure that the driver-arrestee was in a position to make a rational and voluntary decision as to whether to submit to a chemical test. As a result, we have held that an advisory form identical to the one used here is statutorily inadequate because it does not fully inform a driver-arrestee of the consequences of submitting to and failing a chemical test.

We held in *Smith* that the defendant's motor vehicle operator's license could not be revoked by the director of the Nebraska Department of Motor Vehicles because the defendant was not fully informed of the consequences of submitting to a chemical test for alcohol concentration in his body. We reaffirmed our *Smith* decision in *Perrine v. State*, 249 Neb. 518, 544

N.W.2d 364 (1996), and in *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996).

In *Christner*, a criminal case, we held that a defendant's blood test should not be received in evidence when the defendant had not been fully advised of the consequences of taking the test, including the fact that the test result could be used against him in a criminal prosecution. At the time of the *Christner* appeal, this court had not ruled in a criminal case upon the admissibility of a chemical test for alcohol when the driver-arrestee had not been fully advised of the consequences of taking or refusing the test. However, the Court of Appeals had held that when a driver-arrestee has not been fully informed of the consequences of taking a chemical test to determine the concentration of alcohol in his or her body, his or her refusal to take the test is not admissible in evidence to support a criminal charge of refusing to take such a test. *State v. McGurk*, 95 NCA No. 45, case No. A-95-162 (not designated for permanent publication). The Court of Appeals, in *State v. Hatcliff*, 95 NCA No. 45, case No. A-95-198 (not designated for permanent publication), held that the results of a blood test which were preceded by an inadequate advisement of the consequences of taking the test are inadmissible in a criminal case to prove the concentration of alcohol in a driver-arrestee's body. The Court of Appeals reached the same conclusion in a criminal case, *State v. Hingst*, 4 Neb. App. 768, 550 N.W.2d 686 (1996). On petition for further review by this court, we affirmed the Court of Appeals' judgment. See *State v. Hingst, ante* p. 535, 557 N.W.2d 681 (1997).

We again hold that a driver-arrestee in a criminal case who is required to submit to a chemical blood, breath, or urine test under § 60-6,197 should be advised of the natural and direct legal consequences of submitting to a chemical test. Such consequences include that any incriminating results from such a test may be used against the driver-arrestee in a criminal proceeding. We also hold that in a criminal case, if the defendant was read an inadequate advisory form before taking the test, it is error for a trial court, over the defendant's objection, to admit into evidence the results of a chemical blood, breath, or urine

test to prove the concentration of alcohol in the defendant's body.

In Emrich's case, the trial court could not have determined that Emrich was operating a motor vehicle with .10 of 1 gram or more of alcohol per 100 milliliters of his blood without relying upon the results of Emrich's blood test. The record clearly establishes that the county court in convicting Emrich relied solely upon the results of Emrich's blood test.

In *State v. Chambers*, 241 Neb. 66, 70, 486 N.W.2d 481, 484 (1992), we held that "the erroneous admission of evidence in a bench trial of a law action, including a criminal case tried without a jury, is not reversible error if other relevant evidence, admitted without objection or properly admitted over objection, sustains the trial court's necessary factual findings." A reversal is warranted in such a case "if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence." *Id.* (citing *State v. Chambers*, 241 Neb. 60, 486 N.W.2d 219 (1992)).

In Emrich's case, there is no admissible evidence to support a finding that he had .10 of 1 gram or more of alcohol per 100 milliliters of his blood, an essential element of the offense based on alcohol concentration. The trial court committed trial error when it relied explicitly and exclusively upon the inadmissible result of a blood test to find Emrich guilty of operating or being in the actual physical control of a motor vehicle upon the public streets and highways while he had a concentration of .10 of 1 gram or more of alcohol per 100 milliliters of his blood.

Although we are compelled to reverse Emrich's conviction of the charge based on alcohol concentration, we must examine the sufficiency of all the evidence presented against him in order to resolve this matter completely. See *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987). See, also, *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

In *Lee*, we stated that if it appears the evidence is sufficient to support a conviction, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient, the cause must be dismissed.

After a careful examination of the record, we find that there is sufficient admissible evidence upon which a fact finder could find Emrich guilty of operating or having physical control of a motor vehicle on a public road or highway while he was under the influence of alcohol.

## CONCLUSION

Because Emrich's blood test result should not have been received in evidence, we reverse Emrich's conviction for operating or being in the actual physical control of a motor vehicle while he had a concentration of .10 of 1 gram or more of alcohol per 100 milliliters of his blood.

Because there is sufficient evidence in the record from which a fact finder could find Emrich guilty beyond a reasonable doubt of operating or being in the actual physical control of a motor vehicle upon the public streets and highways while he was under the influence of alcohol, we reverse the decision of the district court for Red Willow County and remand the cause to the district court with direction to remand the matter to the county court for a new trial.

REVERSED AND REMANDED WITH DIRECTION.

CONNOLLY, J., dissenting.

I dissent for the reasons stated in my dissent in *State v. Christner, post* p. 549, 557 N.W.2d 707 (1997), and would therefore affirm.

WRIGHT and GERRARD, JJ., join in this dissent.